UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>JOSE LUIS GALLARDO-MONARES,<br><br>                              Defendant. | Case No.:  19-cr-3836-MDD-WQH<br><br>**ORDER** |

HAYES Judge:

The matter before the Court is the Notice of Appeal to District Court filed by Defendant Jose Luis Gallardo-Monares. (ECF No. 39.)

**BACKGROUND**

On September 26, 2019, Plaintiff United States of America filed a single-count Information charging Defendant with a misdemeanor charge of attempted improper entry of an alien, in violation of 8 U.S.C. § 1325(a)(1). (ECF No. 1.)

On September 27, 2019, Defendant was arraigned on the Information, pled not guilty, and was released on bond. (ECF No. 3.)

On December 20, 2019, Magistrate Judge Mitchell D. Dembin presided over a one-day bench trial in which the United States called two witnesses: Border Patrol Agent and K-9 handler Luis Rodriguez, the apprehending agent; and Border Patrol Agent Derrick McCain, a records custodian. (Trial Trans. at 6–31, 33–36, ECF No. 58-2.)

Agent Rodriguez testified that he had been in the Border Patrol for 18 years, assigned to the Campo station for his entire tenure and worked as a K-9 handler since 2010. *Id*. at 6. Agent Rodriguez testified that, on June 26, 2019, at 6:57 a.m., he responded to an alert from a seismic intrusion device that detected movement in a remote area less than a mile from the border. *Id*. at 11–12. Agent Rodriguez testified that he knew this area and had made arrests there before. *Id*. at 12. He testified that when he arrived at the scene, he discovered multiple sets of footprints heading north, further into the United States. *Id*. Agent Rodriguez testified that the footprints did not have a tread pattern like the bottom of a shoe normally would leave; instead, "[i]t's just the outline of a shoe." *Id*. at 13.  In Agent Rodriguez's experience, this indicated the individuals were wearing "booties," which he described as a cloth used to conceal the shoeprints of an individual, to cover the pattern left by their shoes. *Id*. at 13. In Agent Rodriguez's experience, the significance of the booties was "to prevent, from the individuals that come into the country illegally, to leave any definite marking of the shoe that they're wearing." *Id*. at 22.

Agent Rodriguez testified that he followed the footprints with the assistance of his K-9 partner. *Id*. at 14. After tracking the footprints for approximately 30 minutes to a location approximately two miles north of the border and approximately 16 miles from the nearest port of entry, Agent Rodriguez encountered three individuals hiding in brush, including two men lying face down in an apparent attempt to conceal themselves. *Id*. at 14, 21. One of the individuals encountered by Agent Rodriguez was Defendant. *Id*. at 14. Agent Rodriguez testified that he noticed Defendant and the other two individuals were wearing booties over their shoes. *Id*. at 19. Agent Rodriguez also observed that Defendant and his two co-travelers did not have any hiking, camping, or hunting equipment, and there were no businesses or campgrounds in the area, and Agent Rodriguez did not observe any vehicles on the nearest road, which was a half-mile away. *Id*. at 19–21.

Agent Rodriguez testified that he identified himself as a United States Border Patrol Agent and conducted an immigration inspection on Defendant and the other two suspects in the Spanish language. *Id*. at 16; *see also id*. at 8 (Agent Rodriguez testified he is a fluent

Spanish speaker). Agent Rodriguez testified that he asked Defendant what country he was a citizen of, and whether Defendant had any immigration documents to show that he was legally present in the United States. *Id*. at 16. Defendant answered that he was a citizen of Mexico and had no such immigration documents. *Id*. Defendant's two co-travelers also admitted to being citizens of other countries and not having legal documents to be in the United States. *Id*. Agent Rodriguez testified that he then arrested Defendant and his co-travelers. *Id*. at 17.

The Government next called Agent McCain. Agent McCain testified that, as part of his duties as a liaison to the United States Attorney's Office, he regularly accesses federal immigration databases, performs records checks, and maintains A-files related to undocumented aliens. *Id*. at 33–34. Agent McCain testified that when he searched these databases for Defendant, there was no record of any application for lawful admission to the United States or for any other immigration benefits. *Id*. at 36.

Defendant did not present any evidence at trial. *Id*. at 37.

Judge Dembin denied Defendant's oral motion for judgment of acquittal, *id*. at 37–38, and then found Defendant guilty. *Id*. at 43. Judge Dembin stated that he considered Defendant's admissions in the field that he was an alien without any legal documentation supporting his presence in the United States. *Id*. at 42. Judge Dembin stated that corroborating evidence included the evidence that Defendant "was moving north from the border … with no road," and "[a]t the time that the agent encountered Mr. Gallardo, there appeared to be an attempt to conceal, as opposed to be out in the open, doing something." *Id*. Judge Dembin also relied on the evidence that Defendant had been wearing booties, stating that "[f]olks … who … have not immediately crossed the border, or who … otherwise have lawful business in the area, I can't think of a reason why they would wear booties." *Id*. at 43. Judge Dembin stated that "[w]hen I combine … that information together, I'm compelled to the conclusion that Mr. Gallardo did in fact commit the crime of attempted illegal entry on the day in question." *Id*. Judge Dembin deferred sentencing

to allow Defendant to spend the end-of-year holidays with his family in the United States. *Id*. at 46–49.

On January 6, 2020, Judge Dembin sentenced Defendant to time served. (ECF No. 37.)

On January 10, 2020, Defendant filed a Notice of Appeal to the District Court. (ECF No. 39.) After a stay of the case and the issuance of orders to show cause (*see* ECF Nos. 50–56, 61), the parties filed their respective appeal briefs (*see* ECF Nos. 58, 62). The docket reflects that Defendant did not file a reply brief despite being given an extension of time to do so. (*See* ECF Nos. 63–65.)

## ANALYSIS

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. Rule 58(g)(2)(B) of the Rules of Criminal Procedure provides that "[a] defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry." Fed. R. Crim. P. 58(g)(2)(B). Defendant's Notice of Appeal was timely filed.

"The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). In reviewing the conviction, the district court must "ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Corona-Garcia*, 210 F.3d 973, 978 (9th Cir. 2000) (quotation omitted). The magistrate judge's findings of fact are reviewed for clear error, *see, e.g.*, *United States v. Leos-Maldonado*, 302 F.3d 1061, 1063 (9th Cir. 2002), while the magistrate judge's legal conclusions, including challenges to the sufficiency of evidence and questions of statutory interpretation, are reviewed de novo. *See, e.g.*, *United States v. Roach*, 792 F.3d 1142, 1144 (9th Cir. 2015).

Defendant contends that "the government failed to prove any element beyond a reasonable doubt and therefore failed to prove that Mr. Gallardo-Monares committed the

crime of attempted illegal entry beyond a reasonable doubt." (ECF No. 58 at 8.) Specifically, Defendant contends that "the government failed to prove alienage beyond a reasonable doubt"; "the government failed to prove, beyond a reasonable doubt, an entry or attempted entry at a time and place other than a designated port of entry"; "the government failed to prove beyond a reasonable doubt that Mr. Gallardo-Monares had the conscious desire to enter the United States illegally"; and "the government failed to prove, beyond a reasonable doubt, an overt act that was a substantial step towards a completed offense." *Id*. at 9, 11, 12.

The Government contends that this Court should affirm Defendant's conviction because "Gallardo received a fair trial with sufficient evidence of alienage, entry into the United States, specific intent to enter free from official restraint, and his substantial steps taken towards committing the crime." (ECF No. 62 at 16.) Section 1325(a)(1) prohibits "[a]ny alien" from "enter[ing] or attempt[ing] to enter the United States at any time or place other than as designated by immigration officers." 8 U.S.C. § 1325(a)(1). "Alienage is a specific element of this offense, and the government must prove alienage beyond a reasonable doubt." *United States v. Higuera-Llamos*, 574 F.3d 1206, 1209 (9th Cir. 2009) (citing *United States v. Smith-Baltiher*, 424 F.3d 913, 921 (9th Cir. 2005)).

"When the primary evidence of citizenship offered by the Government consists of the defendant's own admissions, those admissions require 'some independent corroborating evidence in order to serve as the basis for a conviction.'" *United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997) (quoting *United States v. Lopez-Alvarez*, 970 F.2d 583, 589 (9th Cir. 1992)); *see also United States v. Garcia-Villegas*, 575 F.3d 949, 950 (9th Cir. 2009) ("Admissions, postfactum, of the elements of the crime with which the defendant is charged must be corroborated by 'substantial independent evidence which would tend to establish the trustworthiness of the statement[s].'") (quoting *Opper v. United States*, 348 U.S. 84, 93 (1954)). "This is the contemporary iteration of the common law *corpus delicti* rule." *United States v. Valdez-Novoa*, 780 F.3d 906, 922 (9th Cir. 2015) (citing *Lopez-Alvarez*, 970 F.2d at 591). "[T]he *corpus deliciti* rule does not require the

government to introduce evidence that would be independently sufficient to convict the defendant in the absence of the confession. Rather, it requires evidence sufficient to corroborate the defendant's confession." *Id*. at 923 (citations omitted). "To satisfy the corroboration requirement, the Government 'must introduce independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently reliable.'" *Hernandez*, 105 F.3d at 1332 (quoting *Lopez-Alvarez*, 970 F.2d at 592). The Court of Appeals for the Ninth Circuit has explained:

> [W]e review the sufficiency of evidence on the denial of a motion for judgment of acquittal de novo. But where that motion is based on a challenge that 'the admission was not adequately corroborated by independent evidence to constitute sufficient proof,' we have never strayed from clear error review of the underlying issue of the adequacy of corroboration. This is so because factual determinations are given more deference than legal conclusions on appeal.

*United States v. Bejar-Guizar*, 142 F.4th 1188, 1191 n.2 (9th Cir. 2025) (quoting *Hernandez*, 105 F.3d at 1332).

The Government introduced the following evidence to corroborate Defendant's field admissions: Defendant was found in a remote area two miles north of the border and 16 miles from the nearest designated port of entry; Agent Rodriguez tracked the shoeprints for 30 minutes from a location three-quarters of a mile north of the border to Defendant's hiding location; Defendant was found hiding in a bush and in a group of three men, two of whom were lying face down on the ground; Defendant was wearing booties, which were used by individuals attempting to conceal their movement; Defendant's two co-travelers also admitted they were not United States citizens and did not have legal documents to enter the United States; Defendant was encountered in a location previously used to illegally cross into the United States; Defendant did not have any documents authorizing him to enter or remain in the United States; Defendant lacked any hiking, camping, or hunting gear that might otherwise explain his presence in the remote location near the border, and there were no vehicles parked on the nearest road; and records checks indicated

Defendant had never applied or received authorization for legal entry into the United States. Judge Dembin reasonably found that independent evidence adequately corroborated Defendant's field admission that he was a Mexican citizen without legal authorization to be in the United States. *See Garcia-Villegas*, 575 F.3d at 951 (hiding in a bush can supply corroboration). Judge Dembin did not commit clear error and reasonably found that the Government proved alienage beyond a reasonable doubt.

Defendant also contends that "the government failed to prove, beyond a reasonable doubt, an entry or attempted entry at a time and place other than a designated port of entry." (ECF No. 58 at 11.) Specifically, Defendant contends that "there was absolutely no evidence whatsoever as to when, where, or how Mr. Gallardo-Monares crossed the border." *Id*. at 10.

The Government introduced evidence that, on June 26, 2019, Agent Rodriguez received an alert as to movement at a location just three-quarters of a mile north of the border. Agent Rodriguez went to that location, observed shoeprints consistent with the use of booties, and tracked those shoeprints north—i.e., away from the border—to a location two miles north of the border and 16 miles from the nearest port of entry where Defendant and two others were hiding and wearing booties. That evidence, combined with Defendant's corroborated admissions as to his alienage and lack of proper documentation, adequately established that Defendant attempted to enter the United States at a place other than a designated port of entry "on or about June 26, 2019," as alleged in the Complaint and the Information. (ECF Nos. 1, 21.)

The date of entry or attempted entry is not an essential element of an illegal entry offense. *See* 8 U.S.C. § 1325(a)(1) (applying to "[a]ny alien who . . . enters or attempts to enter the United States at any time or place other than as designated by immigration officers"); *cf. United States v. Godinez-Rabadan*, 289 F.3d 630, 632 (9th Cir. 2002) (affirming an attempted reentry conviction of 8 U.S.C. § 1326 despite the charging document containing no specific date). "Where, as here, the date is not a material element of the offense, any variance between the date charged in the indictment and proof of the

7

date at trial is harmless error if it does not affect the defendant's substantial rights." *United States v. Shea*, 493 F.3d 1110, 1118 (9th Cir. 2007) (citation omitted). "Specifically, the variance must not be of a character which could have misled the defendant at the trial and must not present a danger of double jeopardy." *Id*. (quotation omitted). "A variance typically is immaterial if the government has proven that the criminal act occurred on a date reasonably near the date cited in the indictment." *Id*. (collecting cases holding that date variances of two months or less are immaterial, while a variance of seven months is material). The allegation that Defendant illegally entered the United States "on or about June 26, 2019" adequately apprised Defendant of the charges against him, and there is no indication that there is a danger of double jeopardy.

Defendant finally contends that "the government failed to prove beyond a reasonable doubt that Mr. Gallardo-Monares had the conscious desire to enter the United States illegally," and "the government failed to prove, beyond a reasonable doubt, an overt act that was a substantial step towards a completed offense." (ECF No. 58 at 12.) As discussed above, the Government produced evidence indicating that Defendant and his co-travelers were found hiding in a bush and wearing booties, which are used to conceal shoeprints. Agent Rodriguez testified that he found Defendant by following the shoeprints north from the site of a seismic intrusion alert less than a mile north of the border to Defendant's hiding location two miles north of the border. The evidence of walking, hiding and wearing booties, when combined with Defendant's admission of alienage and lack of authorization, is adequate to show that Defendant had the conscious desire to enter the United States illegally, and took an overt act that was a substantial step towards the completed offense.

"[A]fter viewing the evidence in the light most favorable to the prosecution," *Corona-Garcia*, 210 F.3d at 978, this Court finds that the Government adequately proved the elements of Section 1325(a)(1).

/ / /

/ / /

/ / /

1

## CONCLUSION

2    IT IS HEREBY ORDERED that the Notice of Appeal to District Court (ECF No.

3    39) filed by Defendant Jose Luis Gallardo-Monares is denied. The Judgment (ECF No. 37)

4    is affirmed. The Clerk of the Court shall close this case.

5    Dated:  January 5, 2026

6    *William Q. Hayes*
     Hon. William Q. Hayes

7    United States District Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28